IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GENERAL ELECTRIC CAPITAL CORP.        :

    v.                                 :   Civil Action No. DKC 09-3149

DREAM TOURS, INC., et al.             :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this replevin action is an unopposed motion for summary judgment filed by Plaintiff General Electric Capital Corporation. (Papers 14, 15, 17).[1] The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion will be granted in part.

**I. Background**

The following facts are uncontroverted. Plaintiff General Electric Capital Corporation ("GE Capital") is a Delaware corporation with its principal place of business in Connecticut. Defendant Dream Tours, Inc., is a Virginia corporation with its

---

[1] Plaintiff separately filed its motion for summary judgment (paper 14) and memorandum and exhibits (paper 15). On June 29, 2010, Plaintiff filed papers under the docket entry "Motion and Notice for Entry of Order Granting Plaintiff's Motion for Summary Judgment," attaching a proposed order. (Paper 17). This "motion" will be renamed "proposed order."

principal place of business in Maryland.  Defendant Peter Yi, the President of Dream Tours, is a resident of the Commonwealth of Virginia.

On or about January 30, 2003, Dream Tours entered into a security agreement with GE Capital whereby GE Capital agreed to finance Dream Tours' purchase of two motorcoaches, identified by a collateral schedule as a 2000 Van Hool T2145 Intercity Motorcoach, serial number YE2TC13B3Y2044037, and a 2000 Prevost H345 Intercity Motorcoach, serial number 2PCH33493Y1013345 (together, "the vehicles").  (Paper 15, Ex. 1).  Dream Tours executed a promissory note agreeing to remit consecutive monthly payments of $10,130.13 for a term of eighty months with interest accruing at a rate of ten percent per annum, and GE Capital was granted a security interest in the vehicles, which it subsequently perfected.[2]  On the same date, Mr. Yi executed an individual guaranty agreeing to be "primar[ily], absolute[ly], continu[ally], and unconditional[ly]" bound to GE Capital for the "prompt payment and performance" of Dream Tours' obligation. (Paper 15, Ex. 4, at 1).

In May 2008, Dream Tours defaulted on the loan by failing to remit the scheduled payment for that month.  (Paper 15, Ex.

---

[2] The security agreement, promissory note, and collateral schedule (paper 15, ex. 1) are collectively referred to as "the security documents."

10, Affidavit of Seth Graff, at ¶ 13). When Dream Tours failed to pay for the months of June, July, and August 2008, GE Capital sent a letter, dated August 26, 2008, advising Dream Tours that its account was in default in the amount of $67,552.73, and threatening "to pursue other actions to protect [its] investment" if that amount was not received by September 5, 2008. (Paper 15, Ex. 5).

On August 27, 2008, Dream Tours filed a voluntary petition under Chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Maryland. (Paper 15, Ex. 10, at ¶ 16). On July 7, 2009, the bankruptcy court entered a Consent Order Providing Adequate Protection and Terminating Automatic Stay as to General Electric Capital Corporation and Certain Personal Property of the Debtor ("the consent order"), which set forth terms and conditions of Dream Tour's repayment of its debt going forward. (Paper 15, Ex. 6). The court found that, as of May 26, 2009, Dream Tours owed $228,517.99 under the security documents, in addition to collection expenses, attorneys' fees, and costs. The consent order required GE Capital to "forbear from exercising and enforcing its rights and remedies" under the security documents as long as Dream Tours strictly complied with the schedule of payments established therein. (*Id*. at ¶ 2). In the event of a default, the order required GE Capital to provide notice to Dream Tours and permit

3

it five days to cure, after which GE Capital was "entitled to assert and enforce all rights and remedies" available to it under the security documents. (*Id*. at ¶ 5B).[3]

Dream Tours failed to make two payments under the consent order that were due by September 1, 2009. By a letter dated September 18, 2009, GE Capital gave notice of the default (paper 15, ex. 8), but Dream Tours failed to remit any further payment. As of November 12, 2009, the principal balance due to GE Capital under the security documents was $171,224.30, plus continuing interest, late charges, attorneys' fees, and costs. (Paper 15, Ex. 10, at ¶ 22).

On November 24, 2009, GE Capital commenced this action against Dream Tours and Mr. Yi by filing a complaint raising four counts: (1) replevin and detinue, (2) pretrial seizure, possession of personal property, and a temporary restraining order, (3) preliminary and permanent injunctive relief and detinue, and (4) damages. (Paper 1). On December 16, 2009, a hearing was held on Plaintiff's request for interim relief.[4] At its conclusion, the court issued an Order for Pretrial Seizure

---

[3] On August 25, 2009, the bankruptcy court entered a consent order dismissing the bankruptcy case. (Paper 15, Ex. 7).

[4] Defendants were provided notice of the hearing and were represented by counsel. Defense counsel did not dispute that Defendants were in default and that Plaintiff was entitled to possession of the vehicles.

and for Preliminary Injunction, finding that GE Capital was the holder of perfected security interests and liens on the vehicles, that Plaintiff had established a reasonable likelihood that Dream Tours was in default, that Defendants had refused to surrender the vehicles upon demand, and that there was a significant risk of irreparable harm if interim relief were not granted. (Paper 11). Accordingly, the court granted the motion for preliminary injunction and issued a writ permitting GE Capital to take immediate possession of the vehicles. GE Capital took possession on December 21, 2009, and is preparing to liquidate the collateral. (Paper 15, Ex. 10, at ¶ 47).

Defendants failed to respond to the complaint and, on May 20, 2010, GE Capital filed the pending motion for summary judgment (papers 14, 15), to which Defendants have also failed to respond.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 377 (2007); *Emmett*, 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

Where, as here, the nonmoving party fails to respond, the court may not automatically grant the requested relief. *See* Fed.R.Civ.P. 56(e)(2). Rather, it must "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

## III. Analysis

Under Maryland law, actions for replevin are governed by Md. Rule 12-601, which provides that "[a] person claiming the right to immediate possession of personal property may file an action under this Rule for possession before judgment." Md. Rule 12-601(a). Such action may be brought against "the person who has possession of the property at the time the complaint is filed," Md. Rule 12-601(b), and the complaint must contain "(1) a description of the property claimed and an allegation of its value, (2) an allegation that the defendant unjustly detains the property, (3) a claim for return of the property, and (4) any claim for damages to the property or for its detention," Md. Rule 12-601(c). Upon the filing of the complaint, the court must schedule a hearing, written notice of which must be served upon the defendant along with the summons, complaint, and any

exhibits. Md. Rule 12-601(e). At the conclusion of that hearing, if the court finds the plaintiff is entitled to possession before judgment, it "shall order issuance of a writ directing the sheriff to place the plaintiff in possession of the property, provided that the plaintiff files a bond for the satisfaction of all costs and damages that may be awarded to the defendant" or a third party claimant. Md. Rule 12-601(g). Pursuant to subsection (h) of the rule, "[a]fter the issue of the right to possession before judgment is determined, the action shall proceed as an action for recovery of property after judgment under Rule 12-602." *See Wallander v. Barnes*, 341 Md. 553, 572 (1996) ("Modern replevin in Maryland is a pre-judgment, but post-probable cause determination, seizure.").

Rule 12-602, entitled "Recovery of Property or Value after Judgment – Detinue," provides, in turn, that "[a] judgment for the plaintiff shall award possession of the property or, in the alternative, payment of its value." Md. Rule 12-602(d)(1). Such judgment must "separately set forth the value of the property and any amount awarded for damage to or detention of the property." *Id*. Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 11-104(a), "[i]n an action of detinue a plaintiff may recover the personal property and damages for the wrongful detention of the property."

The instant case was commenced as an action for replevin, *i.e.*, for possession of the vehicles prior to judgment. In accordance with Md. Rule 12-601, Plaintiff served Defendants with the complaint and summons and provided notice of the preliminary hearing.[5] Defendants were represented at that hearing by counsel, who did not dispute that Defendants were in possession of the vehicles, that they were in default of their obligations under the security documents, and that Plaintiff was entitled to immediate possession. The court found that Plaintiff was entitled to possession of the vehicles before judgment and ordered Defendants to surrender them immediately. Upon observing that Plaintiff had posted a sufficient bond, the court further ordered the issuance of a writ of possession to be executed, if necessary, by the United States Marshal Service. (Paper 11).

Once the issue of the right to possession before judgment was determined, the case was converted, pursuant to Rule 12-601(h), to an action for detinue, *i.e.*, for recovery of the

---

[5] When defense counsel argued at the hearing that Mr. Yi was not properly served with the complaint, the court suggested that he could file a motion to quash the affidavit of service. No such motion has been filed. Indeed, aside from retaining counsel to appear at the preliminary hearing, Defendants have taken no action in this case. It is undisputed, moreover, that Mr. Yi is the sole proprietor or corporate officer of Dream Tours, and defense counsel acknowledged at the hearing that service was properly effected upon the corporate defendant.

vehicles after judgment. Since that time, however, the vehicles have been surrendered by Defendants. They are presently in the possession of Plaintiff, which is "in the process of exercising its security interest by liquidating the Vehicles in accordance with the law." (Paper 15, Ex. 10, at ¶ 49).

Plaintiff asks the court to issue a permanent injunction granting it "permanent and exclusive possession of the Vehicles" and permitting it to "exercise all of its rights regarding the Vehicles, and specifically to dispose of the Vehicles in accordance with the Security Documents and at law." (Paper 17, Ex. 1, at 12). Injunctive relief is not appropriate under these circumstances, however. To obtain a permanent injunction, Plaintiff must show (1) that it has suffered an irreparable injury; (2) that legal remedies, such as monetary damages, are inadequate compensation, (3) that in considering the balance of hardships between the parties an equitable remedy is warranted, and (4) that the public interest would not be disserved. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Ledo Pizza System, Inc. v. Ledo Restaurant, Inc.*, Civ. No. DKC 06-3177, 2010 WL 1328538, at *10 (D.Md. Mar. 29, 2010) ("Such relief is never automatic; rather, it is reserved for those instances where repetition of the offending behavior is likely if not enjoined."). Considering that Plaintiff is in possession of the vehicles and has already taken steps to

liquidate the collateral, as it is entitled to do under the security agreement, there is little chance that Defendants' conduct will be repeated. Moreover, as Plaintiff's request for damages makes clear, there is a legal remedy available.

Nevertheless, Plaintiff is entitled to entry of a final judgment. The affidavit and evidence submitted in support of its motion for summary judgment clearly establish Defendants' liability under Md. Rules 12-601 and 12-602. Defendants do not dispute that they are in default of their obligations under the security documents and have not opposed Plaintiff's motion for summary judgment. The security agreement provides, in the event of a default, that Plaintiff has the right to take immediate possession of the vehicles, to sell them at public auction or privately, and to apply the proceeds of the sale against the remaining debt. (Paper 15, Ex. 1, at § 8). The guaranty executed by Mr. Yi establishes his personal liability for Dream Tours' default. (Paper 15, Ex. 4). As there are no disputes as to material fact, Plaintiff's motion for summary judgment will be granted.

As to damages, Plaintiff requests an award of $171,225.30, representing the unpaid principal due under the security documents; interest at the default rate of eighteen percent per annum from November 12, 2009, until such time as the amount is paid in full; attorneys' fees in the amount of $46,027.70;

"expenses of $2,007.38"; and costs. (Paper 17, at 13). Damages in a replevin action are generally limited to compensation for loss of use of the property and actual injury to the property. *See Associates Commercial Corp. v. Wood*, 22 F.Supp.2d 502, 507 n. 7 (D.Md. 1999) (citing *General Motors Acceptance Corp. v. Petrillo*, 253 Md. 669 (1969)). What Plaintiff seeks is enforcement of Dream Tours' obligations under the security documents, but it has not specifically alleged a cause of action for breach of contract. The fourth count of the complaint, however, is essentially a breach of contract claim, and the court will construe it as such. That count, labeled "Damages," requests "judgment against the Defendant, Dream Tours, Inc.[,] in the principal sum of $171,225.30 plus continuing interest, late charges, prepayment premiums, if any, and other costs and fees, including attorneys' fees until paid in full." (Paper 1, at ¶ 51).

Plaintiff has established, through the affidavit of GE Capital account manager Seth Graff, that as of November 12, 2009, Dream Tours owed a principal amount of $171,225.30 on the vehicles. (Paper 15, Ex. 10, at ¶ 22). Mr. Graff further avers that Plaintiff is attempting to liquidate the collateral (*id*. at ¶ 49), and that the fair market value of the vehicles is $240,000 (*id*. at ¶ 23). The settlement agreement provides that if Plaintiff sells, leases, or otherwise disposes of the

12

vehicle, it must apply the proceeds against Dream Tours' debt in a specific manner:

> Proceeds from any sale or lease or other disposition shall be applied: first, to all costs of repossession, storage, and disposition including without limitation attorneys', appraisers', and auctioneers' fees; second, to discharge the obligations then in default; third, to discharge any other Indebtedness of Debtor to Secured Party, whether as obligor, endorser, guarantor, surety or Indemnitor; fourth, to expenses incurred in paying or settling liens and claims against the Collateral; and lastly, to Debtor, if there exists any surplus. Debtor shall remain fully liable for any deficiency.

(Paper 15, Ex. 10, at § 8(c)). Until the sale occurs, the court is unable to determine the amount of damages with any degree of certainty. Considering also that Plaintiff has provided no calculation of pre-judgment interest and insufficient support for other costs to which it claims entitlement, it will be directed to submit a petition, after the vehicles are sold, demonstrating how the proceeds should be applied and setting forth a specific computation of pre-judgment interest.

As to attorneys' fees, the security agreement provides:

> In the event this Agreement, any Note or other Debt Documents are placed in the hands of an attorney for collection of money due or to become due or to obtain performance of any provision hereof, Debtor agrees to pay all reasonable attorneys' fees incurred by Secured Party, and further agrees that payment of such fees is secured hereunder. Debtor and Secured Party agree that such

>           fees to the extent not in excess of twenty
>           percent (20%) of subject amount owing after
>           defaults (if permitted by law, or such
>           lesser sum as may otherwise be permitted by
>           law) shall be deemed reasonable.

(Paper 15, Ex. 1, at § 8(d). While an award of attorneys' fees may be appropriate, Plaintiff has not demonstrated how the sizeable amount it requests comports with the security agreement. Thus, concomitantly with the filing of its petition addressing damages, Plaintiff should also file a petition detailing the amount of attorneys' fees sought in accordance with the terms of the security agreement and in a form complying with Local Rule 109.2.[6]  Costs are available to Plaintiff pursuant to Fed.R.Civ.P. 54(d)(1), and a properly supported bill of costs should be filed pursuant to Local Rule 109.1.

---

[6] The invoices submitted by Plaintiff (paper 15, ex. 11) are not sufficient under this rule. The court further notes that these invoices appear to include attorneys' fees and costs associated with the litigation in the bankruptcy court and in an action against Mr. Yi in the Fairfax County Circuit Court. Plaintiff has provided no evidence – by affidavit or otherwise – demonstrating the reasonableness of these fees, nor has it pointed to any authority permitting the court to award fees for litigation that took place in other courts. *See McMillan v. Morgan Couty*, No. 1:08CV9DAK, 2010 WL 1753401, *7 (D.Utah Apr. 29, 2010) ("Where parties have unsuccessfully requested attorney fees in a prior litigation, parties are barred from re-requesting those fees in a second litigation under principles of res judicata." (citing *Fox v. Connecticut Fire Ins. Co.*, 380 F.2d 360, 362 (10th Cir. 1967)).

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment will be granted in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge